### LOSS LEONARD V. THE STATE.

#### No. 4000. Decided March 22, 1916.

**Theft of a Hog—Insufficiency of the Evidence—Newly Discovered Evidence.**

Where, upon trial of theft of a hog, the record on appeal showed that the evidence for the State was weak on the question of ownership, and that the court overruled a motion for new trial setting out newly discovered evidence which is material, the judgment must be reversed and the cause remanded.

Appeal from the District Court of Angelina. Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of theft of a hog; penalty, two years imprisonment in the penitentiary

The opinion states the case.

*I. D. Fairchild* and *W. J. Townsend, Jr.,* for appellant.—On question of insufficiency of the evidence: McKnight v. State, 58 S. W. Rep., 95; Crockett v. State, 14 Texas Crim. App., 226; Roy v. State, 34 Texas Crim. Rep., 301; Johnson v. State, 52 Texas Crim. Rep., 510, 107 S. W. Rep., 845.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of theft of a hog and his punishment assessed at two years confinement in the State penitentiary.

The State's case, as testified to by its witnesses, is that J. E. Lee owned some hogs that run at large in the Neches River bottom, one of the hogs being a black listed sow, the list consisting of a white streak covering its left hind foot and extending up over the thigh and to near the center of the back. He says his hogs were marked over square and two under bits in right ear, and a crop and under-bit in the left ear. Mr. Lee says he had seen this hog in the bottom frequently prior to the alleged theft, but had been unable to find her since that time. Allen Ashworth testified that he, appellant and Bert Lester went hog hunting, appellant claiming to own hogs in the bottom. That they

looked at several droves of hogs, finally coming to the drove in which was the sow that was killed,—Ashworth shooting the hog at the request of appellant. The hog was cleaned, its head cut off, and when appellant cut the head off Ashworth says he told appellant, "It was a penitentiary offense to cut the hog's head off after sundown in the woods,"—that this was his understanding of the law. Appellant replied, if there is ever going to be any question about it, "I had just better cut the ears off to show it is my hog," and that appellant did cut the ears off and put them in his pocket. Ashworth says the sow they killed was a black sow with one white foot, the white extending up over her thigh. That he did not notice the mark. This is the proof relied on to show that the hog killed was the hog of J. E. Lee.

Appellant introduced testimony that he owned a number of hogs that also ran in the bottom, and that he owned one "listed" virtually the same as the hog testified to by J. E. Lee; that his hogs were marked crop and split in right ear and two under-bits in left. Bert Lester testified that the hog killed was in the mark of appellant and not in the mark of Lee. The ears that appellant claimed he cut off the hog killed were introduced in evidence, and Mr. Lee testified, "If these ears came off the hog killed by defendant it was not my hog,"—that the mark was not his mark, and it seems to be proven beyond question that the ears introduced in evidence were in appellant's mark, and it is also shown beyond question that appellant owned hogs that ran in the bottom. To say the least of it, the evidence is very unsatisfactory to show that the hog killed was the hog of Mr. Lee from whom it is alleged the hog killed was stolen. All the evidence on this point is that Ashworth says they killed a black sow, with some white spots, the white extending up on the side. Lee says he lost a sow about this time of this general description, and he had not been able to find it since that time; that his hog was in a certain mark, no witness testifying that the hog killed was in that mark. On the contrary, Bert Lester, who was present when the sow was killed, says the hog was not in Lee's mark but in appellant's mark, and appellant so testifies. In addition to this all the witnesses say appellant cut the ears off under the circumstances hereinbefore recited, and these ears, according to his testimony, are produced in court, and Mr. Lee says if these are the ears cut off the hog killed it is not his hog. With the evidence in this unsatisfactory condition as to the ownership of Lee of the hog killed, to the motion for a new trial appellant attaches the affidavit of W. H. Crager, V. I. Stringer and Artie Crager, who swear that since the trial and conviction of appellant they went to the Neches River bottom to search for the hog of Mr. Lee, and that some two miles below the accustomed range they found the hog of Mr. Lee alive, with another hog, belonging to him; that "they saw the sow Mr. Lee claims to have lost on last Saturday (after the trial of appellant), and the sow was in the mark of Mr. Lee; that she had one white foot and the white streak extended over her hip up on her back." Under such circumstances we are of the opinion a new trial should have been granted. This testimony may not be true,

but if not these three witnesses committed perjury, but there being no evidence that they did not see this sow alive since the conviction of appellant, we are of the opinion the court erred in not granting a new trial on this newly discovered testimony. Crockett v. State, 14 Texas Crim. App., 226.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, JUDGE, absent.